584

Max Solomon and Nathan Axel, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief of Criminal Section, and William D. Keller, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and PENCE, District Judge.

BARNES, Circuit Judge.

Appellant was charged in one count of conspiracy to violate the provisions of Section 174[1] of Title 21 United States Code, which conspiracy is itself in violation of that statute. Codefendant Manriquez (known as "Nero") was charged in Count I with the conspiracy; and in Count II with the substantive violation of Section 174 of Title 21 United States Code. Both defendants were found guilty of the conspiracy; Manrikuez was acquitted on Count II.

Appellant first raises the sufficiency of the evidence to support a conviction. Briefly, police officers had Manriquez' home under surveillance. He was observed on November 13, 1962, leaving his home in a 1953 Chevrolet, which later parked fifty feet north of a stop sign at a certain street corner (Telegraph Road and McBride Street) in an outlying district of Los Angeles, California. There Manriquez got out of the vehicle, walked to a point where, between the stop sign and a fire hydrant, in the grass, he was seen to make a bending or stooping motion, extending his left hand. Manriquez then left the scene and was driven in his 1953 Chevrolet to his home.

The officers went back to Telegraph Road and McBride Street, and at the spot

1. § 174: "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five years or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

where Manriquez had stopped, found a crumpled container for Pall Mall cigarettes with two condoms with whitish powder inside, which proved later to be heroin.

Forty minutes later defendant Arraiga arrived at the scene in a 1960 or 1961 Thunderbird car, parked and started to walk *past* the vital spot between the stop sign and the fire hydrant on the northwest corner; but just as the officers drove past the scene, Arraiga was seen to "spin around," go to the vital spot, drop to one knee, and make motions with his hands in "the exact spot" that the heroin had been found (Exhibit 5, photograph).

Defendant Arraiga then went to a gas station telephone booth, admittedly called codefendant Manriquez; went back to his car, left the scene, was followed by the officers (who "lost" him), and later returned to the corner, with both defendants in Arraiga's car. The Thunderbird parked as before (thirty or forty feet north on McBride Street, from the northwest corner of Telegraph Road). After a four or five minute wait in the car, both defendants left their automobile, walked to the stop sign, stopped, and looked down in the area where the heroin had been found. Both defendants then walked east out of sight, then Manriquez alone came back to the corner adjacent to the stop sign where Manriquez looked down, *bent down* for two minutes, stood up, was joined by Arraiga; both men then got into the Thunderbird and left the scene.

Arraiga was arrested several weeks later, and at that time denied knowing his codefendant, *according to the officer who* took him into custody. This included knowing anyone by the name of "Nero." At the trial defendant Arraiga stated he did not know Carlos Manriquez by that name, but only as Nero.

Arraiga, the only witness in his own defense, testified he was present at the scene, generally, on the night in question, to meet a young lady at a nearby bar. "Nero" had told him of this young lady. He then discovered, when she was not at the bar, that he had lost the crystal from his wristwatch, and this had occasioned his return to the corner and his gropings in the grass at the critical area; that he had telephoned Nero and brought him to the scene to locate both the young lady and the watch crystal. Why he searched for his watch crystal at the exact spot where heroin had been earlier found was not explained.

■■ This story presented a disputed question of fact, largely circumstantial. Whether a judge's finding or a jury's verdict, it must be sustained if reasonable minds as triers of the fact could find that the evidence fairly excludes every reasonable hypothesis but that of guilt. Remmer v. United States, 9 Cir., 1953, 205 F.2d 277; Williams v. United States, 9 Cir., 1959, 273 F.2d 781. We think such a finding could be here made.

Appellant urges no intent was proved; this is valid argument before a trial court, but not here. Appellee urges the following was sufficient to establish intent:

"Those facts indicative of a criminal conspiracy are: (1) On the evening in question, Officer Cook saw the defendant Manriquez making a 'bending or stooping motion' with his left hand extended in the area between a stop sign and fire hydrant at the northwest corner of Telegraph Road and McBride Street. No one was with Manriquez. (2) Some five to six minutes later Cook retrieved an apparently empty Pall Mall package from the area between the hydrant and sign. This package contained heroin. (3) Approximately 45 minutes later the appellant pulled to the curb on the west side of Telegraph Road. He was alone and walked immediately to the corner in question. (4) The appellant was then observed to be *on one knee* in the grassy area between the fire plug and street sign and appeared to be searching the area with his hands. (5) Arraiga left the area minutes later and by his own admission he thereafter

placed a phone call to Manriquez. (6) After completing the call, Arraiga again drove to the northwest corner of McBride and Telegraph and was seen to leave his car in the area. (7) Arraiga terminated this visit some 5 minutes later and was not observed again for about 20 minutes. When seen again the appellant was driving his car and had Manriquez as his passenger. (8) Arraiga parked his car at the McBride corner and was observed to look in the gutter area abutting the ground between the hydrant and sign. At the same time Manriquez was searching the grassy area. (9) Manriquez continued to look as Arraiga entered a nearby bar. (10) A short time later both men again combed the area before leaving. (11) Upon questioning by the arresting officers, Arraiga stated he knew no one by the name of Carlos Manriquez, nor did he know anyone nicknamed 'Nero,' i.e., an alias of Manriquez. Arraiga further stated that he did not know anyone residing at 941 South McBride Street. At trial the appellant stated he had been to the home of Carlos Manriquez on several occasions and knew him by that name and by the alias of 'Nero.' (12) The appellant stated at trial that he had parked on McBride and walked via the northwest corner of McBride and Telegraph to the Wayside Inn on Telegraph Road. The testimony of the agent revealed that the appellant parked on Telegraph near the bar, yet he walked immediately to the corner where the narcotics had been cached. (13) Finally, there is the * * * story of the appellant that the only reason he was in the area was in order that he might meet a girl whom Manriquez knew and in the course of his activities the appellant lost his watch crystal in the approximate area where the officers discovered the heroin."

We find no abuse of discretion in the trial court's finding of guilt on the issue of fact as it did. We cannot disturb that finding.

Nor is appellant's second point (the alleged misconception by the trial court of the law as to the quantum of proof) worthy of much comment. It is immaterial, and at best harmless error. The Transcript of Testimony, particularly where the trial judge found the government had not proved its case beyond a reasonable doubt with respect to Count II, is revealing in showing he had the correct law in mind.

Nor was the trial judge acting under any mistake or inadvertence in sentencing appellant under 21 U.S.C. § 174. The record clearly disproves that. The judgment and sentence are affirmed.