**John T. McCLAIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23335.**

United States Court of Appeals
Ninth Circuit.

Sept. 18, 1969.

Rehearing Denied Nov. 10, 1969.

Burton Marks (argued), Los Angeles, Cal., for appellant.

Henry S. Novak, Jr. (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and CARTER, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge.

Appellant was convicted by the Court, sitting without a jury, under an indictment charging that he, together with two others, on or about November 28, 1967, with intent to defraud the United States, knowingly received, concealed and facilitated the transportation and concealment of seventy kilograms of marihuana which he knew had theretofore been imported and brought into the United States contrary to law. Special findings of fact were waived.

---

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation

The facts established by the evidence are that on November 23, 1967, one Juan Acosta Gutierrez, a Mexican, was hired in Tecate, Mexico, to drive a car containing marihuana to the "It Club" in Los Angeles, California, and there to contact a short, little thin Mexican wearing black gabardine pants. He told the Customs officials about the plan. On November 24, he drove a 1955 Buick across the border containing sixty kilos of marihuana. The load was inspected by officials at the border and he was permitted to proceed under their surveillance. He drove to the It Club on Washington Street, parked the car, left the key under the mat in accordance with instructions, entered the Club and ordered a beer. While he was waiting, he saw Appellant and another man unload the marihuana from the car. Some time later, the Appellant and a co-defendant, Cruz-Castro, came up to Gutierrez where he was seated at the bar. Cruz-Castro told him the car was unloaded and he should return to Mexico. Cruz-Castro asked Appellant for $20 for gasoline so Gutierrez could return and bring back some more marihuana. Appellant gave Gutierrez the $20 and the latter returned to Mexico after reporting to the Customs officials.

On November 27, someone came to Gutierrez' home in Tecate and told him the car was loaded for another trip. He was given the same instructions and drove across the border to Los Angeles with the knowledge and under the surveillance of the Customs officers. He drove to the It Club where he met Cruz-Castro and waited for the car to be unloaded. While there, he saw Cruz-Castro in conversation with Appellant.

The co-defendant, Cruz-Castro, testified that he saw Appellant on November 24 at the It Club after he had been directed there by a man from Tijuana, Mexico, with instructions to receive money from a thin, regular stature Negro which would be paid for marihuana they were going to send him. Cruz-Castro was instructed to return to Mexico with the money. Cruz-Castro saw Appellant help unload the car after Gutierrez drove up and parked it, and Cruz-Castro handed the $20 to Gutierrez after Appellant paid it for gasoline. The next day, Appellant paid Cruz-Castro $1,600, the latter returned to Mexico and, upon instructions, traveled again to the It Club in Los Angeles to see Appellant and receive more money. Cruz-Castro met Appellant on Sunday, November 26, but the car with marihuana had not arrived. The following night, November 27, the car arrived. Appellant told Cruz-Castro and Gutierrez that they would have to wait a while for the car to be unloaded. When the car was unloaded, the witness saw Appellant put the packages of marihuana into a red suitcase and put the suitcase in another car. Cruz-Castro did not speak English and had to communicate with Appellant primarily by gestures.

Several Customs agents testified to the surveillance of the transactions. One saw a co-defendant, Jones, remove the packages of marihuana from the fender wells of the Gutierrez car and saw Appellant place some marihuana in a red suitcase and put it in the trunk compartment of a Cadillac, a car registered to someone else which Appellant was admittedly using for personal transportation.

 Appellant argues that the conviction must be reversed because the statutory inferences of unlawful importation and knowledge thereof imputed to one in possession of marihuana are unconstitutional.[1] Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. While the indictment in this case did not charge smuggling under 21 U.S.C. § 176a, but charged reception and concealment of marihuana with knowledge of unlawful importation, the proofs adduced were

---

1. "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury." Title 21 U.S.C., § 176a.

adequate to sustain conviction of Appellant as a principal in a smuggling enterprise involving two specific unlawful importations from Mexico, as well as a conviction for the offense actually charged. The *Leary* decision has no applicability to a charge of smuggling marihuana across the border, Witt v. United States, 9 Cir., 413 F.2d 303, decided June 6, 1969, and by parity of reasoning, has no relevancy to a reception and concealment charge where the evidence shows actual knowledge of and participation in the plan of illegal importation and the statutory inferences were not relied upon. If this had been a jury trial and the jury had been instructed on the statutory inferences, we would have a different case. But, as noted, the case was tried to the Court and specific findings were waived. On appeal, findings will be implied in support of the judgment if the evidence, viewed in a light most favorable to the Government, warrants them. Pederson v. United States, 9 Cir. 1968, 392 F.2d 41; Arraiga v. United States, 9 Cir. 1963, 323 F.2d 584; Lustiger v. United States, 9 Cir. 1967, 386 F.2d 132.[2] Here the evidence competently supports an implied finding that Appellant had actual knowledge of unlawful importation and was an active participant in the entire plan. Cf. Juvera v. United States, 9 Cir. 1967, 378 F.2d 433. It is also interesting to observe that in his oral comments on the evidence at the time of rendering judgment, the trial judge did not once mention or allude to the statutory inferences. He relied upon the principles of "aiding and abetting, counseling, conspiracy and joint venture."

In a further attack upon the constitutionality of the statute (Fn. 1, supra), Appellant argues that the phrase "unless the defendant explains his possession to *the satisfaction of the jury*" (emphasis added) brings the statute within the case of United States v. Jackson, 1968, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, and requires a defendant to waive a jury trial in order to avoid the statutory inferences inasmuch as they apply only to a jury trial and not to a court trial. In *Jackson*, the Supreme Court could not attribute to the words "the jury" the generic connotation of "the trier of fact" inasmuch as the legislative history related by the Court required a conclusion that Congress intended only the jury, after a plea of not guilty, and not the Court, after a jury-waived trial or after a plea of guilty, to have power to impose capital punishment. In truth, the restrictive intent of Congress was so patent with respect to the meaning of "the jury" in the Federal Kidnapping Statute that the Government did not dispute the proposition that "the federal statute authorizes the jury—and only the jury—to return a verdict of death." 390 U.S. 572, 88 S.Ct. 1211.

No similar legislative intent has been demonstrated with respect to the statutory inferences articulated in 21 U.S.C. § 176a and its companion 21 U.S.C. § 174. These statutes simply declare rules of evidence (Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904) and, construed in pari materia with decisions and rules permitting waiver of jury trial (Rule 23, Federal Rules of Criminal Procedure;

---

2. "Lustiger did not request the trial court to find the facts specially, as he might have done under Rule 23(c), Federal Rules of Criminal Procedure, and no special findings were entered. It follows that we must assume that the trial court found in favor of the Government with respect to each and every alleged statement or concealment relied upon by the Government.

"This being the case, Lustiger cannot obtain reversal on the ground that some of the representations or concealments of material fact relied upon by the Government were not proved to be false, misleading or deceptive. As long as a sufficient number of the statements were shown to be knowingly false, deceptive or misleading to permit the trial court to infer that defendant intentionally engaged in a scheme to defraud, the conviction must be affirmed. Ballard v. United States, 9 Cir., 138 F.2d 540, 545." Lustiger v. United States, 386 F.2d 132 at 135–136.

Patton v. United States, 1930, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854) are applicable equally to court trials and jury trials. Indeed, this interpretation has been acknowledged for years without known objection from bench or bar. For example, in Verdugo v. United States, 9 Cir. 1968, 402 F.2d 599, the Court stated: "The second paragraph of section 174 permits *the trier of fact* to infer guilt from unexplained possession." (Emphasis added.) Both Hernandez v. United States, 9 Cir. 1962, 300 F.2d 114, and McIntyre v. United States, 9 Cir. 1967, 380 F.2d 747, involved jury-waived trials in which the statutory inferences were relied upon without question. The words "the jury" in sections 174 and 176a should not be read as excluding the Court in non-jury cases. A like result was reached in Bartch v. United States, 10 Cir. 1964, 330 F.2d 466, in construing Colorado's wrongful death statute in a non-jury federal tort claims action where the statute provided: " * * * In every such action *the jury* may give such damages as they may deem fair and just, not exceeding twenty-five thousand dollars * * *." (Emphasis added.) Under this interpretation, there is no basis for Appellant's contention that he must waive a jury trial to avoid the statutory inferences.

Appellant also contends that the conviction must be reversed on the ground that the marihuana was lawfully imported with the knowledge and under the surveillance of Customs agents. The argument is without substance. Juvera v. United States, 9 Cir. 1967, 378 F.2d 433; Pederson v. United States, 9 Cir., 392 F.2d 41.

After the trial and judgment of guilt, the United States filed an information alleging a prior conviction of defendant under 26 U.S.C. § 4704(a) for having, on May 5, 1958, unlawfully sold and distributed 324 grains of heroin not in or from its original stamped package. The Court thereupon sentenced defendant to the minimum term of ten years as a second offender under 21 U.S.C. § 176a. At sentencing and again on appeal, defendant contended that the prior conviction was void because of the rulings in Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906; Haynes v. United States, 1968, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923; Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57; and United States v. Covington, 1969, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed. 94.

The Government asserts that such an attack on a prior conviction may be entertained only in an independent civil suit under 28 U.S.C. § 2255, or a writ of error coram nobis, but the cases cited do not support the thesis. It is, of course, established that a § 2255 petition is available to dissolve a void conviction for which a defendant is confined or under restraint, Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, and the coram nobis writ may be pursued in proper circumstances to inquire into the validity of an ancient conviction, United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248, but the availability of such a remedy in a given case does not require a conclusion that it is the only remedy. In this case, the Government asserted the prior conviction to enhance the mandatory minimum sentence required to be rendered. Defendant contested the fact of the prior conviction upon the ground that it was void on its face—that it was, in effect, a nullity. He did not assert any factual issues which would require an evidentiary hearing to resolve the dispute and which might justify remission of the defendant to a collateral remedy. Limiting our ruling to the precise situation in this case, we discern no obstacle to the consideration by the sentencing court of the validity of the prior conviction and we hold that the question is properly before us on appeal.

The prior conviction for the 1958 heroin transaction was not void on its face and was properly invoked to enhance

the required mandatory minimum sentence for the following reasons:

▮ 1. The decisions relied upon by Appellant did not declare the narcotics tax statutes to be unconstitutional per se. Each one of them is predicated upon a timely assertion of the privilege against self-incrimination by the person accused. Such a claim of privilege does not appear from the face of the record of prior conviction relied upon in this case. The privilege cannot be claimed for the first time in a collateral attack on the judgment of conviction. Graham v. United States, 6 Cir. 1969, 407 F.2d 1313.

▮ 2. The prior conviction was based on a violation of 26 U.S.C. § 4704 (a), a sale of heroin not in or from the original stamped package. In our view, the constitutionality of this provision of the Narcotics Tax Act is not affected by the Marchetti-Grosso line of cases. The Act and regulations require tax stamps to be purchased by persons registered in Class I, i. e., importers, manufacturers, producers and compounders, and to be affixed to the bottle or container of narcotics. 26 U.S.C. §§ 4771, 4703, 26 CFR 151.30, 151.41. The penalty statute (26 U.S.C. § 4704) then makes it unlawful "for any person to purchase, sell, dispense, or distribute narcotic drugs except in * * * or from the original stamped package." This provision is separable from and not affected by the registration (26 U.S.C. § 4722), possession (26 U.S.C. § 4724) and order form (26 U.S.C. § 4705) provisions of the Narcotics Tax statutes. If it is an unstamped package of narcotics and any person sells, dispenses, purchases or distributes drugs in or from it, he commits an offense and no infringement of his privilege against self-incrimination is involved. Cf. Montgomery v. United States, 9 Cir. 1969, 407 F.2d 1312.

▮ Appellant's point that the Government cannot tax a prohibited transaction is without merit. United States v. Yuginovich, 1921, 256 U.S. 450, 41 S. Ct. 551, 65 L.Ed. 1043; Adelman v. United States, 9 Cir. 1949, 174 F.2d 283.

The judgment is affirmed.