**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Larry D. SHIPSTEAD, Defendant-**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Edward McCOLLOUGH, Defendant-**
**Appellant.**

**Nos. 25721, 25722.**

Mabel D. Gardner, pro se.

Richard H. Wilson, W. B. Dickenson, Jr., Hill, Hill & Dickenson, Tampa, Fla., for defendant-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

United States Court of Appeals, Ninth Circuit.

Oct. 22, 1970.

Billy L. Williamson (argued), North-
western School of Law, Lewis & Clark

College, Portland, Or., for appellant Larry D. Shipstead.

Gerald R. Pullen (argued), Portland, Or., for Edward McCollough.

Jack C. Wong (argued), Asst. U. S. Atty., Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant-appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

On July 31, 1969, a Special Agent of the Bureau of Narcotics obtained a search warrant from a United States Commissioner in Portland, Oregon, and on that day, as authorized by the warrant, searched the residence, garage and curtilage at 5116 S.W. First Avenue, Portland. The search was for "Methamphetamine which is being manufactured in violation of 21 U.S.C. 331(q) (1)."

At the time of the search, defendants Shipstead and McCollough were found on the premises with two women, McCollough being then engaged in the manufacture of methamphetamine in the basement of the residence. The agents seized and inventoried numerous articles including chemical apparatus and supplies used or useful for the manufacture of the drug, $1,500 found on the person of defendant Shipstead and miscellaneous articles of personal property. Defendants waived a jury, were tried in a joint trial by the Court, and were found guilty of two counts charging unlawful manufacture of methamphetamine (21 U.S.C. § 331(q) (1)) and possession with intent to sell of a quantity of methamphetamine (21 U.S.C. § 331(q) (3)). Concurrent sentences were imposed on defendant McCollough and consecutive sentences on defendant Shipstead.

■ Defendant McCollough's assignments of error are unimpressive. He relies on Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in support of an argument that the Drug Abuse Control Amendments of 1965, to the Federal Food Drug and Cosmetics Act are unconstitutional because of the registration requirements of 21 U.S.C. § 360 et seq. *Leary* is not authority for this proposition. No element of self-incrimination is involved in the legislative abjuration of the manufacture or of the possession with intent to sell of depressant or stimulant drugs by an unregistered person. Cf. Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969); McClain v. United States, 417 F.2d 489 (9th Cir. 1969); Witt v. United States, 413 F.2d 303 (9th Cir. 1969); Wynn v. United States, 422 F.2d 1245 (9th Cir. 1970); United States v. Vansant, 423 F.2d 620 (9th Cir. 1970); United States v. Johnson, 423 F.2d 621 (9th Cir. 1970).

■ The indictment miscited the federal regulation, 21 CFR 320.3(b), designating "methamphetamine and their (sic) salts" as a depressant or stimulant drug. Such miscitation of a federal statute, rule or regulation is not basis for error absent a showing, and there is none here, that defendant was misled to his prejudice. Rule 7, Federal Rules of Criminal Procedure.

■ McCollough also argues insufficient evidence to sustain the conviction under Count II of possession with intent to sell. The sentence under Count II was concurrent with Count I. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). The jury apparently found that McCollough jointly possessed 117 grams of methamphetamine found in Shipstead's bedroom. McCollough was caught in the act of manufacturing the drug, he claimed ownership of part of the funds found on Shipstead and lived in the house with Shipstead. There was more, but this was enough evidence to prove a joint enterprise and joint possession.

■■ Two of defendant Shipstead's arguments are similarly unimpressive. He contends, without authority, that the unauthorized seizure of articles not named or closely associated with the

---

* Hon. Bruce R. Thompson, United Sttaes District Judge, Reno, Nevada, sitting by designation.

"things to be seized" described in the warrant invalidates the entire search and seizure. The articles received in evidence were all closely associated with the manufacture and sale of methamphetamine. He did not contend below that the seizure of other miscellaneous articles was unreasonable and not justified by the warrant and he cannot do so for the first time in this Court. Shipstead's claim that incriminating statements were induced by a promise to reduce bail was thoroughly aired in an evidentiary hearing before the District Judge who found from substantial evidence that the statements were voluntary and not wrongfully induced. No basis for appellate reconsideration is presented.

Shipstead's substantial assignment of error is the contention that the affidavit was inadequate to support the search warrant. The affidavit alleged:

"The undersigned being duly sworn deposes and says:

"That he (has reason to believe) that (on the premises known as) the residence, garage and curtilage located at 5116 S.W. 1st Avenue, Portland, Oregon, in the District of Oregon, there is now being concealed certain property, namely methamphetamine which is being manufactured in violation of 21 U.S.C. § 331(q) (1).

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Within the last two days, a reliable informant went into the above address and purchased from an occupant approximately 1 gram of methamphetamine. The informant reported that the occupants of the house were in the process of manufacturing methamphetamine. LWS This informant has supplied law enforcement officers with information over the last five or six months which has resulted in three arrests. The informant noted that within the above address were a number of test tubes, burners and other chemistry apparatus."

The affidavit was sworn to by Lon W. Sturrock, a special agent of the Bureau

of Narcotics and Dangerous Drugs. From the evidence received at the hearing of the motion to suppress, it appears that the affidavit constituted the entire information on which the United States Commissioner relied in issuing the warrant.

At the suppression hearing, Agent Sturrock testified that the informant referred to in the affidavit was not his personal informant but that the information had been relayed to him through Deputy Epham of the Clackamas County Sheriff's Office. Sturrock did know the identity of the informant. He did not know what three arrests were referred to in the affidavit—this information had come from Deputy Epham. Sturrock had been an agent of the Bureau of Narcotics and Dangerous Drugs for approximately one year but Deputy Epham had cooperated with the Bureau before Sturrock's employment.

Appellant contends the affidavit to be insufficient because it does not state to whom the informant reported his information, and it does not show how the informant identified the substance purchased as methamphetamine or how he was qualified to identify it or to recognize that methamphetamine was being manufactured. Appellant also contends that the averment that the informant is "reliable" and that "within the last five or six months" he supplied information "which has resulted in three arrests" is conclusory and inadequate, particularly so in the light of the testimony at the suppression hearing that he was not Agent Sturrock's informant and Sturrock didn't know the character of the arrests referred to or whether they involved narcotics or dangerous drugs or had resulted in convictions.

Thus we are faced with two basic problems—first, the legal sufficiency of the affidavit, and second, whether the weight and credibility of the affidavit may be attacked or impeached by evidence brought out at the suppression hearing which was not presented to or considered by the magistrate who issued the warrant.

The requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), govern the sufficiency of the affidavit. First, with respect to the requirement that facts be stated from which the magistrate may reach an independent judgment of reliability, we think the averment "This informant has supplied law enforcement officers with information over the last five or six months which has resulted in three arrests" is legally sufficient. Convictions rather than arrests need not be alleged to support reliability. Presumably the law has been obeyed and the arrests were based on probable cause which the affidavit states was supplied, at least in part, by the informant. United States v. Colon, 419 F.2d 120 (2nd Cir. 1969).

We also see no merit in the suggestion that the arrests must have been for drug violations to support reliability. It may well be that a narcotic informer's experience is customarily with narcotics violations, but information leading to arrest for theft, rape, treason or any offense is just as much a statement of experience supporting reliability as an arrest for a drug offense.[1]

The Spinelli requirement of an averment of knowledge and the basis therefor is clearly satisfied. The affidavit states that the informant went on the premises within the last two days and purchased one gram of methamphetamine from an occupant. He reported that the occupants were in the process of manufacturing the drug and that he there observed chemistry apparatus. This eyewitness account is clearly sufficient under Spinelli.[2]

The suggestion that a search warrant affidavit must allege how the informant knew the drug was methamphetamine is hypercritical and falls before the Ventresca admonitions (United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)) that such affidavits "must be tested * * * in a common sense and realistic fashion" and "[T]echnical requirements of elaborate specificity * * * have no proper place in this area."

Finally, the contentions that the affiant must have had personal contact with the informant and that the affidavit falls if it does not detail the chain of conversations or reports by which the affiant received the information have been rejected by the decision of this Court in Travis v. United States, 362 F.2d 477 (9th Cir. 1966), where, as in this case, the information came to the affiant through official channels.

In view of our conclusion that the affidavit is sufficient in itself and cannot,

1. In affirming the bare sufficiency of the affidavit, we share the District Judge's expressed concern with its skimpiness. Too often law enforcement officers are told: "All you have to do is allege this much, the Shipstead case says so." This is bad advice. The law permits officers to protect the identity of confidential informers but this should not be treated as an invitation to allege as little as possible. On the contrary, in search warrant affidavits, the officers should disclose everything they know which will help the magistrate determine probable cause.

2. "Perhaps even more important is the fact that Aguilar's other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Cf. Jaben v. United States. 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, 393 U.S. 410 at 416, 89 S.Ct. 584 at 589, 21 L.Ed.2d 637 (1969).

for the reasons stated, be successfully attacked upon any of the grounds asserted, and because the evidence adduced at the suppression hearing was not inconsistent with the case for probable cause made by the affidavit, it would be imprudent to undertake a theoretical discussion in this case of whether (1) on a suppression hearing probable cause for search must be established independently of and in support of the affidavit (Cf. United States v. Roth, 391 F.2d 507 at 509 (7th Cir. 1968)); and (2) a search must be suppressed if substantial errors in the affidavit, made honestly and in good faith, are disclosed at the suppression hearing. See Rugendorf v. United States, 376 U.S. 528 at 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States v. Bowling, 351 F.2d 236 (6th Cir. 1965).

The judgments appealed from are affirmed.