**UNITED STATES of America,
Appellee,**

v.

**Terry Joseph WING, Appellant.**

**No. 23969.**

United States Court of Appeals,
Ninth Circuit.

Oct. 29, 1971.

Rehearing Denied Nov. 22, 1971.

---

14. Quoted at note 4 *supra*.

Robert E. Capron (argued), of Ferguson & Capron, San Francisco, Cal., Herbert Porter, Los Angeles, Cal., for appellant.

David P. Bancroft, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., F. Steele Langford, Chief, Crim. Div., San Francisco, Cal., for appellee.

Before BARNES and KILKENNY, Circuit Judges, and McNICHOLS, District Judge.*

BARNES, Circuit Judge:

Appellant Terry Joseph Wing was indicted with three other defendants (McMullen, Franklin and McGoldrich) by a grand jury in the United States District Court, Southern District of Texas, Corpus Christi Division (No. 68–C–15), and each was charged in three counts with (a) conspiracy to smuggle marijuana from Mexico into the United States; (b) the substantive crime of smuggling 500 pounds of uninvoiced marijuana into the United States; and (c) with the substantive count of transporting, and facilitating the transportation and concealment, of the marijuana after importation, knowing it to have been imported contrary to law.

The record before us is silent as to the outcome of the charges against the defendants Franklin and McGoldrich. The government recites they are fugitives. The charges against appellant and defendant McMullen were, on motion of defendant Wing, transferred for trial to the now Northern District of California for trial. Each defendant entered a not guilty plea; and thereafter defendant McMullen changed his plea of not guilty to guilty.

Appellant Wing waived a jury trial, and was found guilty of all three counts. He was sentenced to eight years on each count; the sentences to be concurrent. He appeals *in forma pauperis.*

After the granting of some seven extensions of time and three times ordering his appeal dismissed for failure to prosecute, the last time with prejudice (see Appellee's Opposition filed 8/31/71, pp. 2–5), this Court, characterizing this appeal as presenting "a shabby history," reinstated the appeal. Throughout what is now fast approaching three years since his conviction—four years since his offenses—appellant Wing has been at large on bail.

Four errors are relied upon by appellant:

*First:* that the trial court erred in presuming that knowledge of the illegal importation of marijuana may be established by proof of possession alone;

*Second:* that all *direct* evidence of the illegal importation of marijuana by co-conspirators was obtained through an illegal search and seizure at the importing ship in Texas, and was inadmissible against appellant;

*Third:* that it was error—both (a) to admit a Mexican border crossing document, and (b) to admit evidence of a phone call and a telegram;

*Fourth:* the evidence was insufficient as to each count.

We find no merit as to any alleged error, and we affirm.

I.  *The Presumption of Knowledge that the Marijuana was Illegally Imported, Based on Mere Possession.*

We recognize, of course, that we are bound by the teachings of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); a case readily misunderstood by the bar. *Leary* was a jury case, involving the use of jury instructions. One or more instructions given therein permitted the jury to rely on the presumption made impermissible in *Leary*; other instructions did not require such reliance. Ascertainment of which theory the jury relied on was im-

* The Honorable Ray McNichols, United States District Judge, District of Idaho, Boise, Idaho, sitting by designation.

possible. Here there was no jury; and no instructions are involved.

*Leary, supra,* was not a smuggling case when it went to the jury, after the dismissal of Count One, smuggling. The Supreme Court in *Leary* itself points out there are five ways in which a possessor of marijuana might "know" that his marijuana came from abroad (*id.,* pp. 47–51, 89 S.Ct. 1532). The second way is that the defendant might have smuggled it himself (*id.,* p. 48, 89 S.Ct. 1532), or *"a possessor may have learned the source of his marijuana by indirect means,"* although "relatively few consumers know the origin of their marijuana by indirect means." (*id.,* p. 49, 89 S.Ct. at 1555). (Emphasis added).

This Court first considered the applicability of *Leary* to smuggling cases in Witt v. United States, 413 F.2d 303 (9 Cir., 1969). There we said: "We are not persuaded by the appellant's argument that the Supreme Court's decisions immunize smugglers from prosecution." (*id.,* p. 305) In passing, we note that in *Witt,* cert. was denied. 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230 (9 Cir., 1969).

In McClain v. United States, 417 F.2d 489 (9 Cir., 1969), at 491–492 we approved the *Witt* rationale, not only as to smuggling counts, but to reception and concealment counts.[1] "\* \* \* Leary \* \* \* has no relevancy \* \* \* where the evidence shows actual knowledge of and participation in the plan of illegal importation and the statutory inferences were not relied upon."

Appellant relies heavily on Howard v. United States, 423 F.2d 1102 (9 Cir., 1970). But that case does not purport to overrule or impair the holdings of *Witt, supra,* or *McClain, supra* (see Note 4 of *Howard*), but rests on the fact "\* \* \* we are unable to determine whether or not the district court relied on the presumption invalidated by Leary." (*Howard,* p. 1104 of 423 F.2d). There were remarks "both ways." (*id.,* p. 1104). To this ambiguity, there was added in *Howard* an "improper" refusal by the trial court to make special findings.

In Wing, the appellant states positively in his opening brief, "the record is silent as to whether or not the court based his conclusion upon the unconstitutional presumption." (Op. Br. p. 9). Appellant suggests that there are "strong indications" that it did, however, based largely on alleged insufficiency of the evidence to convict; which issue we later consider.

We cannot agree with appellant that the record is silent on the matter. True, never once was the presumption alluded to by court or counsel. But in pronouncing its verdict, the court stated at the conclusion of Wing's trial:

"\* \* \* I have no doubt in my mind about *his full knowledge of the contraband* shipped from the West Coast of Mexico to the East, *and the ultimate designation by ship of the marihuana into the United States."* (R.T. 1002; emphasis supplied.)

---

1. "Leary \* \* \* has no relevancy \* \* \* where the evidence shows actual knowledge of and participation in the plan of illegal importation and the statutory inferences were not relied upon. If this had been a jury trial and the jury had been instructed on the statutory inferences, we would have a different case. But, as noted, the case was tried to the Court and specific findings were waived. On appeal, findings will be implied in support of the judgment if the evidence, viewed in a light most favorable to the Government, warrants them. Pederson v. United States, 9 Cir. 1968, 392 F.2d 41; Arraiga v. United States, 9 Cir. 1963, 323 F.2d 584; Lustiger v. United States, 9 Cir. 1967, 386 F.2d 132. Here the evidence competently supports an implied finding that Appellant had actual knowledge of unlawful importation and was an active participant in the entire plan. *Cf.* Juvera v. United States, 9 Cir. 1967, 378 F.2d 433. It is also interesting to observe that in his oral comments on the evidence at the time of rendering judgment, the trial judge did not once mention or allude to the statutory inferences." McClain v. United States, *supra,* 417 F.2d at 492.

This can only mean the court relied on defendant's actual knowledge of the marijuana's foreign origin. He had no reason to even consider the presumption. We find no "strong indications"—in fact —no indication—that he did.

■ Furthermore, if we were to be wrong in our finding a lack of reliance on the Court's part, the presumption outlawed by *Leary*, could affect his conviction on Count Three alone, and not the convictions on Counts One and Two (smuggling) for which the sentences were the same and concurrent. Under well settled law, we are, as a matter of convenience, not required to consider Count Three alone, if the convictions are to stand on Counts One and Two. United States v. Newton, 442 F.2d 622, 623 (9th Cir. 1971); United States v. Peterson, 435 F.2d 1313 (9th Cir. 1971); and *cf.*: Feldstein v. United States, 429 F.2d 1092, 1094–95 (9th Cir. 1970), and Zaragoza-Almeida v. United States, 427 F.2d 1148, 1149 (9th Cir. 1970).

## II. *The Alleged Illegal Search of the Vessel in Texas.*

Appellant asserts this was not a *valid* border search, relying largely on cases involving the stopping and searching of automobiles, a lesser or greater distance from the border, and the length of time the vessel had been at the border.

■ We hold this was clearly a valid border search. 19 U.S.C. § 1581 reads in pertinent part:

"Any officer of the customs may *at any time* go on board of *any vessel* * * * at any place * * * within the customs waters * * * and * * * search the vessel * * *," looking for dutiable articles.

19 C.F.R. 711 provides that articles of foreign origin shall be subject to duty on their entry to the United States from Guantanamo Bay.

Although there had been "a routine safety inspection" of the vessel after it was first taken under tow, the United States Coast Guard had no knowledge the vessel had started its voyage from Cuba. The crew told the Coast Guard it was proceeding from Palacios, Texas (R.T. 293). After the towing of the ship from Port Aransas to Aransas Pass (R.T. 350) (Ex. 32), the crew stated the ship had been proceeding from Florida (R.T. 314–315). It was only after the discovery of the marijuana in San Francisco that the vessel was searched. The boarding agents had word from San Francisco (R.T. 391) that the vessel had arrived from Guantanamo, Cuba (R.T. 372). This was their first knowledge of that fact. *Cf.* Alexander v. United States, 362 F.2d 379 (9th Cir. 1966).

But more important than the question of whether it was a border search, is the lack of any standing on appellant's part to move to suppress the evidence disclosed in the search. United States v. Conrad, 448 F.2d 271 (9th Cir. 1971); United States v. Connor, 450 F.2d 334 (9th Cir. 1971); United States v. Haili, 443 F.2d 1295 (9th Cir. 1971); Sendejas v. United States, 428 F.2d 1040, 1043–1049 (9th Cir. 1970).

■ We hold appellant had no standing to object to the search of a vessel, to which, and to the contents of which, he claimed no ownership and denied any interest. (R.T. 832, 11.18–25). Alderman v. United States, 394 U.S. 165, 171, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Wing cannot complain of the violation of someone else's personal rights under the Fourth Amendment. United States v. Berryhill, 445 F.2d 1189, 1193 (9th Cir. 1971); Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir. 1966). See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

## III. (a) *The Alleged Improper Admission of the Mexican Government's Border Document.*

It was stipulated this border document, Ex. 12, (C.T. 53–A) was "an official foreign record," and that the entries appearing thereon "are official entries (all within of (sic) Rule 27 F.R.Cr.P.

and Rule 44(a) (2) F.R.Civ.P.) of the Government of the Republic of Mexico," (parentheses, *supra*, added). The stipulation continued: "and said exhibit may be received into evidence without the necessity of the publication, attestation and certification required by Rule 44(a) (8) F.R.Civ.P., the defendant expressly reserving all other objections thereto." (C.T. 53–A).

Defense counsel at the trial (R.T. 128–131) conceded (a) that Ex. 12 was an official record of the Mexican government, but reserved objection to its materiality and accuracy; (b) that Ex. 12 "was made as part of the normal procedure at the border by the involved Mexican authorities." [2]

Exhibit 12 indicates that at Mexican Customs at Sonoyta, State of Sonora, Republic of Mexico (opposite Lukeville, Arizona, U.S.A.) on the 23rd of January, 1968, a person representing (a) his name to be "Joseph Wins. Terry," (b) his age to be 27 years, (c) his home outside Mexico as 414 Peninsula Avenue, Burlingame, California, (d) to be without a home address in Mexico, registered himself and his automobile with the Mexican Federal Register of Automobiles in order to obtain a car permit for a 1960 Ford, bearing license plates "C–93184 Calif.", Motor No. F600R20867, which sought to cross the American-Mexican border into Mexico.

Such a six month car permit, or "Permisso de carro", is required of all motor vehicles entering Mexico from the United States, to prevent the selling of such autos in Mexico. The driver of the car must display his personal "turista" visa, and the auto's "pink-slip" for checking purposes (R.T. 139), and establish that the owner has given permission that the car be driven into Mexico. (R.T. 144).

All in-coming cars are checked a second time 60 miles below the Mexican border to see that the car permit coincides with the description and license number of the car.

Appellant urges that because the witness and Mexican custom officer Martinez had no personal knowledge as to who made the entries in Government Ex. 12, the entries were hearsay, and the exhibit could not properly be placed in evidence. We disagree.

Despite page after page of argument as to why the document was or was not admissible by respective counsel, the defense objection was finally narrowed down to a matter of the weight to be accorded the entries. (R.T. 152). We agree that the weight to be accorded the document is properly arguable, but not the admissibility of the document. It falls squarely within the terms of 28 U.S.C. § 1732:

"* * * any writing or record * * * made as a memorandum or record of any act, * * * occurrence, or event, shall be admissible as evidence of such act, * * * occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, etc."

The key to the problem appears to lie in the second paragraph of § 1732(a):

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

28 U.S.C. § 1741 provides that "an official record * * * of a foreign country may be evidenced by a copy, summary, or excerpt authenticated, [etc.]" Here the authentication was waived by a stipulation (Ex. 12), and the official record properly was admitted into evidence.

---

2. "THE COURT: So if a Mexican official with knowledge came here, it is conceded he would say, 'Yes, this is what we make out and this is what we maintain in our file', but you still reserve the right to say or urge or object, whatever term may be more appropriate, that the alleged factual material is not, in fact, an accurate statement of fact?
"MR. PORTER: Yes, Your Honor. That is completely correct." [R.T. 130–131].

■ When the person reporting to the "aduana inspector" at Sonoyta showed his turista visa and pink slip for the auto, he was not doing so gratuitously, but pursuant to Mexican law. Hence the answers he gave are not objectionable as hearsay.

Finnegan v. United States, 204 F.2d 105, 112 (8th Cir. 1953) cert. den. 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 reh. den. 346 U.S. 880, 74 S.Ct. 118, 98 L.Ed. 387.

United States v. Moran, 151 F.2d 661 (2d Cir. 1945).

■ The document is admissible as circumstantial evidence.

Duncan v. United States, 197 F.2d 935, 937 (5th Cir. 1952) cert. den. 344 U.S. 885, 73 S.Ct. 185, 97 L.Ed. 685.

We have here precisely the kind of contemporaneous record of an event (systematically prepared by a sovereign government for its own use and relied upon by it in the performance of its custom's functions), which experience has shown to be trustworthy, and which therefore falls within the purpose and scope of the business records exceptions to the hearsay rule codified in 18 U.S.C. § 1732.

LaPorte v. United States, 300 F.2d 878, 880 (1962); Canadian Pacific Ry. v. United States, 272 F.2d 913, 916–917 (9th Cir. 1959).

Appellant airily asserts that Ex. 12 merely discloses that *someone using appellant's name* crossed into Mexico at Sonoyta on January 23, 1971, with a truck which *resembled* McGoldrich's truck." This "someone" not only used Wing's name, but his former street address in Burlingame, California, where Wing lived. (R.T. 855, 863, 902). This fact alone, one not available to any current casual acquaintance of Wing's, strikes a telling blow to this argument.

Ex. 12 not only showed the truck was a Ford, but that it was the 1960 Ford bought by Wing and McGoldrich—that it bore the same California license plates that were on the 1960 Ford F–600, 2½ ton truck purchased from one Fazio by the two men identified as Wing and McGoldrich in San Francisco on January 12, 1968, i. e., California license plates C–93184.

Ex. 14, the admissibility of which we hereafter discuss, discloses someone from a public telephone in Sonoyta, Mexico, called collect to McGoldrich's telephone number in San Francisco on January 23, 1968. The call was accepted. On that same day someone in McGoldrich's apartment in San Francisco sent a telegram, charged to McGoldrich's telephone, to McGoldrich at "General Delivery, Puerto Vallarta, Jalisco, Mexico" reading:

"Terry is delayed a few hours. Generator trouble. Love." (signed) Vicky.

Eventually the truck was delivered to McGoldrich in Mexico, for it was seen in his possession thereafter at Palacios, Texas.

When Wing went with his co-conspirators to Guantanamo, Cuba, on December 6, 1967, he represented he was born April 1, 1940 (he was 27 years old). The person giving the name of Terry Wing on January 23, 1968 at Sonoyta represented he was 27 years old.

The foregoing evidence indicates that of the two individuals purchasing the truck "to take a band to Canada," McGoldrich could not have taken it across at Sonoyta because he was, according to the wire, in Puerto Vallarta awaiting the truck, and that circumstantial evidence points strongly to the fact it could only have been Wing.

We agree with the trial judge that the appellant's claim he did not take the Ford truck across the Mexican border at Sonoyta—that someone was using his name, and other information known only to him—is beyond belief.[3] The introduction of Ex. 12 was not error.

---

3. As the trial judge observed:
   " * * * parenthetically I might say that I have in the past 28 years never heard a fabrication of such dimension as that offered by the defense in this case." [R.T. 986].

III(b). *The Alleged Improper Admission of Telephone and Telegram Evidence, Because Irrelevant.*

█ No cases are cited by appellant on behalf of this position. This objection has no merit. Both the phone call from Sonoyta to McGoldrich's apartment, and the telegram from the apartment to Puerto Vallarta that same day were not *irrelevant* to prove a conspiracy with regard to the importation of marijuana existed. The telegram was *not* admitted to prove its contents—its admission was linked to prove only that a message was sent. (R.T. 641–2). As to whether the documents added to the proof of appellant's part in the conspiracy in the court's mind, in view of all the other evidence, we cannot say. But it would add to the proof in our minds, and we think their admission was clearly not irrelevant.

IV. *Insufficiency of the Evidence.*

█ Our careful survey of the near 1000 page record indicates clearly there was a conspiracy existing, that there was a ton of marijuana smuggled across the border, and that there was possession and transportation of known smuggled and untaxed marijuana in this country.

Appellant Wing actually had physical possession of some of this marijuana. Appellant urges his was a "passive" possession, but there is much circumstantial evidence of his active participation in the conspiracy to smuggle the huge amounts of marijuana involved.

Because the court stated Wing was not "a major factor" involved in Counts Two and Three does not mean he was not a conspirator as appellant suggests. As the court added in the same sentence, "but I have no doubt in my mind about his (Wing's) *full knowledge of the contraband shipped from the West Coast of Mexico to the East, and the ultimate designation by ship of the marijuana into the United States.*"

Affirmed as to each count.