UNITED STATES of America,
Plaintiff-Appellee,

v.

Abraham FIGUEROA, Sixto Vega, Sr.,
Doris Santiago,
Defendants-Appellants.

No. 82–5699.

United States Court of Appeals,
Eleventh Circuit.

Dec. 5, 1983.

Rehearing and Rehearing En Banc
Denied Feb. 7, 1984.

Max B. Kogen, P.A., Loren H. Cohen, Miami, Fla., for Figueroa.

Robert M. Jasinski, Miami Beach, Fla., for S. Vega, Sr.

Hertz & Carroll, P.A. (court apptd.), Linda L. Carroll, Miami, Fla., for Santiago.

Stanley Marcus, U.S. Atty., Joseph R. Buchanan, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellants Sixto Vega, Doris Santiago, and Abraham Figueroa were tried before the United States District Court for the Southern District of Florida for conspiracy to possess diazepam with intent to distribute and possession of diazepam with intent

to distribute.[1] They were each convicted of both charges by a jury empanelled to hear their jointly-tried cases. Central to the various arguments raised on appeal are challenges to the sufficiency of evidence adduced at trial. After considering appellants' contentions, we affirm Vega's conviction, and reverse those of Santiago and Figueroa.

I.

Based upon information provided to a federal drug enforcement agent by a confidential informant, a warrant was obtained allowing the search of Dade County Services, a warehouse building suspected of containing illicit drugs. On February 25, 1982, federal drug agents set up surveillance of the warehouse and observed appellant Sixto Vega on the premises. Vega operated the business, which sold residential and commercial window supplies. Early in the afternoon, he approached a boat set up on blocks outside the warehouse and apparently discussed something about the boat with co-worker Fernando Coipel. Shortly before the warrant was executed, agents observed Roger Dion arrive by car. They also noticed appellant Abraham Figueroa on the scene, but due to other traffic could not tell how he arrived.

When agents executed the warrant at 4:30, Vega was no longer present. Figueroa, upon questioning, stated that he had been driving with Dion when Dion's car broke down and they had stopped at Dade County Services to seek help. Dion also spoke of car trouble, but claimed that Figueroa had come in a separate car.[2] Figueroa later mentioned to the officer, and

testified at trial, that he was on the premises to purchase a sliding glass shower door.

Agents searching the premises found 50 pounds of pills containing diazepam in a back bedroom of the warehouse and in a pan on top of the boat.[3] Vega was arrested when he returned. He admitted, after a valid *Miranda* warning, that the drugs were his, that he had obtained them from a Colombian and that he was attempting to augment his income by trade in narcotics.

Agent William Rochon testified that the telephone at Dade County Services rang several times during the search. He answered a call from a female asking for "Abraham" and told her that Abraham was occupied. She called back at least twice, stressing that the call was urgent and identifying herself as "Doris." Finally, when asked if she had a message to give Abraham, the caller stated, "The client is here and wants to know how much money." Agent Rochon briefly put her on hold, and then asked, "Are you talking about the merchandise?" She said yes. He then asked, "Quaaludes?", and she replied, "I don't want to talk on the phone." She continued to call, but would say nothing except that she wanted to talk to Abraham. This series of calls raised Rochon's suspicions and Abraham Figueroa was immediately placed under arrest. The following day, a warrant was obtained authorizing the arrest of Doris Santiago, who was living with Figueroa at the time. When arrested, she recognized Agent Rochon's voice and said, "You're the one I talked to on the telephone yesterday."

1. Conspiracy to possess diazepam with intent to distribute violates 21 U.S.C.A. § 846 (West 1981). The possession of diazepam with intent to distribute violates 21 U.S.C.A. § 841 (West 1981).

2. Additional suspicion was cast on the "car trouble" story when Agent Auflick asked Dion if the car would start. Although Dion said it would not, the car started immediately when Auflick requested that he try it.

3. There is some confusion in the record over the actual composition of the drugs found. While the informant claimed that the pills on

the premises were methaquaalone pills (*i.e.*, quaaludes), the initial chemical testing demonstrated that the active ingredient was diazepam, which is more commonly found in valium pills and is apparently used to produce a lower potency "fake quaalude." With this information, the grand jury returned an indictment based upon possession of diazepam. More thorough testing later revealed a significant presence of methaquaalone, but this presence was not brought to the jury's attention because the indictment did not mention it.

The case proceeded to trial and the appellants, with other defendants, were charged with the conspiracy and possession counts. The trial was arranged in a bifurcated manner to allow Vega both to remain silent in his own behalf and testify for his co-defendants. At the close of the government's case, Vega rested without putting on any evidence. The court denied appellants' motions for judgment of acquittal and the jury then deliberated as to Vega, rendering a decision against him. Following this deliberation, appellants Figueroa and Santiago put on their defense. Vega testified that he did not know either of them, and Figueroa explained that he went to the warehouse for legitimate business reasons. After defense testimony, the court once again denied motions for judgment of acquittal made by Santiago and Figueroa. Jury verdicts were rendered against them on each count.

## II.

■ The primary claim of each appellant involves the sufficiency of the evidence to support the jury verdict. We are bound, in reviewing such challenges, to examine the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). From that viewpoint, a conviction is to be affirmed if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. 1982) (Unit B en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[4] We proceed to examine the claims of each appellant separately, keeping in mind the foregoing standard of review for each sufficiency challenge.

## A. SIXTO VEGA

Vega, the operator of Dade County Services, argues that the warrant obtained to authorize a search of his premises was not supported by probable cause. He also claims that there was insufficient evidence against him on each count.

### 1. *Validity of the Warrant*

■ Federal Drug Enforcement Agent Nick Zapata filed an affidavit with his request for a search warrant in which he related information provided by a confidential informant. The informant, who had provided reliable information before in non-drug cases, advised Zapata that Vega was involved in drug trafficking. Specifically, the affidavit stated that Vega had told the informant that he had brought approximately 200 pounds of wet methaquaalone pills to Dade County Services.[5] In addition, the informant claimed to have personally seen the drugs the evening before the warrant was issued. Vega challenges the informant's tip as being insufficient to create the probable cause necessary for the issuance of a search warrant.

■ Following the decision of *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the evaluation of a search warrant based upon informant information involves an inquiry into the "totality of circumstances" presented in the supporting affidavit. *Id.* at ——, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. We therefore must "assess whether there was sufficient information to allow a magistrate to conclude the existence of probable cause." *United States v. Sorrels,* 714 F.2d 1522 at 1528 (11th Cir.1983). Given the traditional deference to a magistrate's decision that probable cause exists, *Spinelli v. United States,*

---

4. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

5. The affidavit and warrant did misstate the address of Dade County Services. However, the mistake is inconsequential in light of a clear description of the name of the building and its physical appearance. *See United States v. Melancon,* 462 F.2d 82, 94 (5th Cir.1972), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972).

393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), the warrant will be upheld on review so long as the magistrate had a "substantial basis" for concluding that the search would reveal evidence of crime. *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). *Accord Illinois v. Gates,* —— U.S. at ——, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.

We readily find on this record that the magistrate did have a "substantial basis" for such a conclusion. First, the affidavit related that the informant had previously provided information that led to a seizure of counterfeit money. *See United States v. Anderson,* 500 F.2d 1311, 1313 n. 4 (5th Cir.1974) (allegation that informant's tips have led to seizure of evidence establishes reliability). *See also* W. LaFave, *Search and Seizure* § 3.3, at 511 (1978) (informant's tip that leads to discovery of evidence may, as a general proposition, be more indicative of reliability than one leading merely to arrest or conviction).[6] Second, the informant was explicitly told that he would be subject to criminal prosecution under 18 U.S.C. § 1001 if he knowingly and willfully gave false information to Agent Zapata. Third, the informant claimed he was told directly by Vega that illegal drugs were present at Dade County Services. *See Spinelli v. United States,* 393 U.S. at 425, 89 S.Ct. at 593 (White, J., concurring) ("If . . . the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient"). Finally, the informant claimed to have seen the drugs on the premises immediately before the search. While the affidavit did not recount how the informant knew the substance to be illicit drugs,[7] the state-

ment of Vega that drugs were on the premises lent credence to the observation. All the facts together amply lead us to conclude that the magistrate did have a substantial basis for issuing the warrant.

### 2. Sufficiency of the Evidence

To sustain a conviction of possession with intent to distribute, the government must prove (1) knowing (2) possession of a controlled substance (3) with intent to distribute it. *United States v. Richards,* 638 F.2d 765, 768 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). Vega's admission that the drugs found at the warehouse belonged to him is sufficient proof of the first two elements of the crime. Given the quantity of diazepam and cutting agents found on the premises and Vega's statement that he was in the drug business, a reasonable jury could have appropriately inferred an "intent to distribute." *United States v. Thomas,* 676 F.2d 531, 535 (11th Cir.1982). Therefore, the evidence presented against Vega on the possession count was such that "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d at 549.

With regard to the conspiracy charge, the basic element which must be proved is an agreement between two or more persons to violate federal narcotics law. *United States v. Lee,* 694 F.2d 649, 652 (11th Cir.1983). Vega's admission that he obtained the drugs from an unnamed Colombian and that he was engaged in drug trade warrants an inference of an agreement to "possess diazepam with intent to

---

**6.** Vega claims that the informant's reliability cannot be established by reliable past information on a different substantive crime than that for which he was convicted. Because past communications can legitimately create a reputation for accuracy, the argument is unpersuasive. *See United States v. Shipstead,* 433 F.2d 368, 372 (9th Cir.1970); W. LaFave, *Search and Seizure* § 3.3, at 520 (1978) ("Another question which has occasionally arisen . . . is whether prior verified information about offenses differ-

ent in kind from that concerning which the informant is currently informing may be taken into account. The courts have consistently answered in the affirmative").

**7.** An informant's failure to explain how he knew a substance to be narcotics does not, by itself, command a finding of "no probable cause." *See, e.g., McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

distribute" so as to sustain the conviction for conspiracy.[8]

## B. ABRAHAM FIGUEROA

Central to Figueroa's claim that there was insufficient evidence to convict is a challenge to the admissibility of certain hearsay statements of his codefendants which the government sought to introduce. Because this challenge affects the quantity of evidence available in our review of his conviction, we consider the admissibility and sufficiency questions together, beginning with the conspiracy charge.

### 1. *Conspiracy to Possess with Intent to Distribute*

■ During the government's case-in-chief, the drug enforcement agents testified to various statements made by the appellants and other alleged coconspirators. Of particular relevance in the case against Figueroa was the content of Doris Santiago's phone calls. Defense counsel objected to the admission of such statements, citing *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The *James* case considered the manner in which hearsay testimony may be admitted pursuant to Fed.R.Evid. 801(d)(2)(E), which allows in evidence statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Specifically, the *James* court held that such statements are not properly admitted in a conspiracy case until "as a preliminary matter, there [is] substantial, independent evidence of a conspiracy at least enough to take the question to a jury." 590 F.2d at 581 (quoting *United States v. Nixon,* 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104 n. 14, 41 L.Ed.2d 1039 (1974)). The "substantial, independent evidence" must show that (1) a

conspiracy existed, (2) the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) the statement was made during the conspiracy and in furtherance thereof. *Id.* at 582. Such a preliminary showing was deemed necessary to counteract the danger of prejudice to one defendant of the inculpatory statements made by his alleged coconspirators.

As a court reviewing the sufficiency of Figueroa's conspiracy conviction, we must, therefore, first consider the independent evidence, *i.e.,* the evidence separate from the hearsay declarations which are sought to be admitted pursuant to the coconspirator rule. If that evidence would not be sufficient to take the question to the jury, then the hearsay declaration cannot be considered. We turn to an evaluation of the independent evidence against Figueroa.

■ The evidence produced against Figueroa on the conspiracy charge is scant. He was present at a legitimate business shortly before a search uncovered a large amount of drugs in a back room of the warehouse. There was no evidence that Figueroa knew Vega or had visited Dade County Services before. There was no evidence suggesting that he had knowledge that there were drugs on the premises. There was no evidence that Figueroa ever went near the room where the drugs were found; the evidence places him only at or near the front door of the warehouse. When questioned, he gave different answers about *why* he had come to Dade County Services and his story about *how* he arrived was contradicted by Dion.[9] Figueroa attributes these inconsistencies to nervousness at the sudden appearance of many police officers. He was called several times

---

8. This conclusion is not undermined by the fact that the unnamed Colombian source was not brought to trial. *United States v. Goodwin,* 492 F.2d 1141 (5th Cir.1974), holds that an individual can be convicted of conspiracy with "unknown persons" referred to in the indictment. The indictment in this case did refer to conspiracy between Vega and "other persons unknown to the grand jury."

9. While Dion's statements about how he and Figueroa arrived are potential hearsay, they are properly admissible to demonstrate the conflict in stories, but not for the truth of the matters asserted by Dion.

by his girlfriend Doris during his detention in the warehouse.[10] Without more, this independent evidence is not sufficient to take the conspiracy issue to a jury. As a result, the content of Santiago's phone call cannot be considered against Figueroa via the coconspirator's rule. *United States v. James,* 590 F.2d at 583. Absent that, there is not sufficient evidence to support Figueroa's conspiracy conviction.

A survey of recent case law supports this conclusion. In *United States v. Pintado,* 715 F.2d 1501 (11th Cir.1983), this court considered the conspiracy conviction of a man found hiding in a closet in a house at the scene of a marijuana off-loading operation. The court held that presence at the scene plus the act of hiding in the closet from drug agents was insufficient to allow an inference of participation in a conspiracy formed by other persons in the house. Similarly, in *United States v. DeSimone,* 660 F.2d 532 (5th Cir.1981) (Unit B), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982), the Former Fifth Circuit reversed a conspiracy conviction on sufficiency grounds. Despite extensive contact between DeSimone and various conspirators before the air shipment of marijuana into a secluded airport at 3:30 in the morning, and the immediate arrest of DeSimone as he fled with other conspirators from a rented car that was ditched while driving away from the airport, the court ruled that the evidence was insufficient to allow the conclusion that DeSimone had

entered into a conspiratorial agreement with his codefendants.

 A conspiracy conviction will be upheld if there is sufficient positive indication that an illegal agreement exists, *United States v. Alvarez,* 625 F.2d 1196 (5th Cir.1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981), or when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him. *United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983). In the instant case, there is no indication of an agreement between Vega and Figueroa, nor is there sufficient evidence, absent the content of the inadmissible phone call from Doris Santiago, to suggest any illicit agreement between Santiago and Figueroa. In addition, the presence of drugs in a back room at Dade County Services cannot be considered so obvious that Figueroa can be implied to have participated in their placement or known about them. For these reasons, we hold that a reasonable jury could not have found that the evidence established guilt beyond a reasonable doubt.[11] The conspiracy conviction must therefore be reversed.

*2. Possession with Intent to Distribute*

 Because there is no evidence of any relationship between Figueroa and Vega, the presence of drugs in Vega's warehouse does not create a "possession"—active or constructive—attributable to Figueroa.[12]

---

**10.** The substance of the phone calls from Santiago, clearly offered to prove the truth of the matters asserted therein, is hearsay. Because no independent proof of a conspiracy is shown, it may not be admitted via the coconspirator rule. Nor is it admissible against Figueroa under any other exception to the hearsay rule.

**11.** Figueroa's conflicting statements do not convert his presence at the warehouse into bona fide evidence of criminal involvement. The conflicting stories presented here are analogous to active flight from the scene, *United States v. DeSimone,* 660 F.2d 532 (5th Cir.1981) (Unit B), or hiding from agents, *United States v. Pintado,* 715 F.2d 1501 (11th Cir.1983), in that their suspicious nature is not sufficient to change the fact of presence into the level of

proof required to sustain a conspiracy conviction. We note also that Figueroa was never in the "presence" of the drugs, which were in a back room remote from his location.

**12.** The trial judge did instruct the jury that one who "aids and abets" the commission of a crime may be found guilty of the principal offense. Still, a finding of guilt based on "aiding and abetting" the possession of a controlled substance with intent to distribute must be supported by "evidence connecting the defendant with both aspects of the crime, possession and intent to distribute." *United States v. Schwartz,* 666 F.2d 461, 463 (11th Cir.1982). The lack of evidence on the possession aspect would render a verdict on an "aiding and abetting" theory invalid.

Because "possession" is an element of this offense, *United States v. Richards*, 658 F.2d at 768, the failure to adequately support it is fatal to the conviction.[13]

## C. DORIS SANTIAGO

### 1. *Conspiracy*

■ Having reversed Figueroa's conspiracy conviction and finding no conspiratorial link between Santiago and Vega (or other persons), we must also reverse the conviction of Santiago on the conspiracy count. *Hartzel v. United States*, 322 U.S. 680, 682 n. 3, 64 S.Ct. 1233, 1234 n. 3, 88 L.Ed. 1534 (1944) (when conspiracy convictions of coconspirators are reversed, remaining coconspirator is entitled to reversal); *United States v. Peterson*, 488 F.2d 645, 651 (5th Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974) (same).

### 2. *Possession with Intent to Distribute*

■ For the reasons discussed in Section II(B)2 above, Santiago's conviction on the substantive possession count must be overturned because of insufficient evidence.

## III.

We hereby affirm the convictions of Sixto Vega, and reverse those of Abraham Figueroa and Doris Santiago.

AFFIRMED IN PART AND REVERSED IN PART.

---

**13.** A coconspirator's drug possession can be attributed to other coconspirators if committed in furtherance of the conspiracy and if it is reasonably foreseeable in the scope of the conspiracy. *United States v. Hodges*, 606 F.2d 520, 523 (5th Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). Because we hold that no conspiracy was adequately shown, *see* Section II(B)1 above, no such attribution is possible.