**UNITED STATES of America**

v.

**Mark Warren WRIGHT.**

**Crim. A. No. CR192–094.**

United States District Court,
S.D. Georgia,
Augusta Division.

Jan. 14, 1993.

**1578**

Terry L. Lloyd, Asst. U.S. Atty., Augusta, GA, for plaintiff.

William F. Hammond, Thomas W. Tucker, Augusta, GA, for defendant.

---

ORDER

BOWEN, District Judge.

Before the Court is Defendant Mark Warren Wright's Motion to Suppress evidence seized in two searches of his residence. On November 30, 1992, the magistrate judge issued a Report and Recommendation that Defendant's Motion to Suppress be granted. The United States of America ("Government") filed a timely objection. For the reasons stated below, Defendant's Motion to Suppress is denied as to the February 22, 1992, search and granted as to the February 24, 1992, search.

## I. BACKGROUND

The captioned case arises from a drug enforcement investigation of Mark and Bonita Wright conducted by Columbia County Sheriff's Department Investigator Johnny Neal. Investigator Neal's inquiry into the Wrights' suspected drug activity began approximately two years before the searches now under scrutiny and focused on their residence as a possible illegal drug distribution center. Investigator Neal's inquiry drew upon informants, information obtained from other law enforcement officers, surveillance of the residence and individuals connected with the suspected drug operation, and a controlled buy of a suspected illegal substance at the residence.

Based upon his findings, Investigator Neal contacted Chief Columbia County Magistrate Huguenin in early 1992 seeking a search warrant for the Wright residence. After first hearing the investigator's oral presentation, Magistrate Huguenin reviewed the written search warrant application and supporting affidavit, then issued a search warrant for the Wright residence. On February 22, 1992, Investigator Neal and others conducted a three- to four-hour search of the Wright residence during which contraband, including approximately one pound of cocaine and one pound of marijuana, was discovered.

Following the February 22, 1992, search, Investigator Neal approached Magistrate Huguenin for a second search warrant to allow re-entry of the Wright residence. Investigator Neal supported that search warrant application by reciting, through oral and affidavit testimony, the circumstances and results of the February 22, 1992, search and by noting Assistant United States Attorney Leon Barfield's opinion that the first search overlooked certain documentary evidence. Also of note, it appears that sometime between the first and second searches, someone broke the investigatory seal on the Wright residence and entered.

## II. ANALYSIS

The Fourth Amendment to the United States Constitution protects citizens

against unreasonable searches and seizures by providing, *inter alia,* that "... no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." In the years since adoption of the Fourth Amendment, the United States Supreme Court has struggled to craft an appropriate, workable test for determining whether a warrant was issued upon probable cause. Most recently, in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Court abandoned the "two-pronged test" derived from its opinions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ("*Aguilar* Test").[1] In doing so, the Court also clarified what standards the judicial officer issuing the warrant is to use, re-adopted[2] and explained a "totality of the circumstances" test to be used in deciding whether probable cause exists, and clarified the role to be played by a court sitting in review of a search warrant.

■ When asked to issue a search warrant, *Gates* explains, the issuing judicial officer is to make a common-sense study of *all the circumstances before him* and then decide whether there is a *"fair probability"* that evidence of a crime or contraband will be found. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The issuing judicial officer's review should include the "basis of knowledge" and "veracity" elements that comprise the abandoned *Aguilar* test, but those two elements should not be given undue weight. Furthermore, weaknesses in certain areas may be compensated for by

strengths in others. *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329.

At the heart of *Gates's* re-affirmation of a "totality of the circumstances" approach to probable cause is the Court's insistence that the probable cause standard is a "... 'practical, nontechnical conception.'" *Gates,* 462 U.S. at 231, 103 S.Ct. at 2328, *quoting Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Indeed, this point is central to the Court's attack on the *Aguilar* "two-pronged test." Also, this "practical, nontechnical" characterization should be read in conjunction with the Court's comments on the phrase "probable cause:" "'In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Gates,* 462 U.S. at 231, 103 S.Ct. at 2328, *quoting Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310. Also, "'[t]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion.'" *Gates,* 462 U.S. at 235, 103 S.Ct. at 2330, *quoting Locke v. United States,* 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813) (Marshall, C.J.). "While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates,* 462 U.S. at 235, 103 S.Ct. at 2330, *quoting Spinelli,* 393 U.S. at 419, 89 S.Ct. at 590.[3]

1. *Spinelli* relied in part on *Aguilar.* Also, *Spinelli* did not explicitly adopt a stringent two-pronged standard, but later cases interpreted it as having established two independent requirements: "basis of knowledge" and "veracity." Under the "basis of knowledge" section, the test requires that the person seeking a warrant give facts to show how he or his informant obtained the information being offered in support of that warrant. Also, under the "veracity" section, the test requires that the issuing judicial officer be shown evidence to support either the credibility of the informant or the reliability of the information given. As developed in later cases, the *Aguilar* test could be satisfied only upon a rigid,

mechanical showing that both elements were satisfied. *Gates,* 462 U.S. at 228–229, 230 n. 5, 103 S.Ct. at 2326–27, 2328 n. 5.

2. *Gates* explains that this totality of the circumstances standard is not a new approach, but rather a reinvigoration of one employed in the past. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328.

3. *See also Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (characterizing the probable cause requirement as the best compromise for accommodating the often opposing interests of privacy and effective law enforcement).

### A. *February 22, 1992, Search*

■ Turning now to Defendant's Motion to Suppress evidence from the February 22, 1992, search, the Court must review Magistrate Huguenin's finding of probable cause. Significantly, the standard of review is not *de novo;* instead, the Court is to determine only whether all the circumstances before Magistrate Huguenin provided him with a "substantial basis" for finding probable cause. *See Massachusetts v. Upton,* 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (noting *Gates*'s rejection of after-the-fact, *de novo* scrutiny of probable cause determinations).[4] Investigator Johnny Neal presented the circumstances surrounding the February 22, 1992, search warrant application to Magistrate Huguenin through an affidavit supported by oral testimony.[5] Investigator Neal's affidavit stated in relevant part:

> In the past 12 months this affiant has received information from numerous different sources in reference to person(s) occupying the above-described residence using and selling Narcotics. This affiant received information from a first time informant that gave information on persons involved in illegal drug activity at the residence and a description of the vehicles that will be driven by each person involved, a description of the persons and the general times they would be located at the residence and at other places involved with the drug activity.

> This affiant has pulled numerous hours of surveillance on the residence and found all the information that was given to be correct, including information that was given on other locations. Surveillance also revealed a number of vehicles that were not given, going to the residence for only a short period of time and then leaving, which is a characteristic of illegal drug sales. In the past 48 hours a controlled buy of cocaine has been made from the residence. This affiant has also received information from ... [certain named Columbia County, Richmond County, and Department of Alcohol, Tobacco, and Firearms investigators]. Each of these investigators received information from a different source than this affiant.

Although the affidavit could have provided more detail and supporting facts in several areas, it is sufficient to have given Magistrate Huguenin a "substantial basis" for finding probable cause. Defendant argues the evidence presented did not support the issuance of a search warrant because that evidence lacked sufficient indicia of reliability. It is true that Investigator Neal did not explain fully how his informants obtained their information or upon what grounds he deemed those informants reliable sources. Defendant's arguments are unpersuasive, however, because of Investigator Neal's corroboration of the first-time informant's statements, the controlled

---

**4.** Elaborating on the deference to be given probable cause determinations, the *Upton* Court stated:

> 'A grudging or negative attitude by reviewing courts toward warrants,' *United States v. Ventresca,* 380 U.S. 102, 108 [85 S.Ct. 741, 746, 13 L.Ed.2d 684] (1965), is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case. [*Gates,* 462 U.S. at 237, n. 10, 103 S.Ct. at 2331, n. 10]. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Upton,* 466 U.S. at 733, 104 S.Ct. at 2088.

**5.** Review of Magistrate Huguenin's decision will include only the evidence presented to him by

affidavit. Even in situations like the one here where a search warrant was obtained by local officers, under state procedure, and *from a state court,* federal procedures must be followed if the search were "federal in execution." *United States v. Lehder–Rivas,* 955 F.2d 1510, 1522 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992). "A search is federal in execution if a federal official 'had a hand in it ...;' " and a federal officer's supplying information to the state officers constitutes federal involvement. *Id.* Here, according to Investigator Neal's affidavit, a Federal Bureau of Alcohol, Tobacco, and Firearms agent supplied information to him. Consequently, the provisions in Fed.R.Crim.P. 41 requiring the recording of oral testimony offered in support of a search warrant application preclude the Court's consideration of Investigator Neal's oral statements to Magistrate Huguenin.

buy, and the support provided by the remaining evidence presented to Magistrate Huguenin. *Cf. Upton,* 466 U.S. at 733, 104 S.Ct. at 2088 (no single point sufficient on its own, but when viewed as a whole evidence supported issuance of search warrant).

The details provided by the first-time informant included descriptions of people involved in operations at the residence, their vehicles, and their future movements from the residence and other alleged centers of illegal drug activity. Investigator Neal confirmed this information through surveillance. Because the informant's description of activities was corroborated by Investigator Neal, Magistrate Huguenin had a basis for believing the informant also was correct in linking those activities to an illegal drug operation inside the residence. *Cf. Gates,* 462 U.S. at 241, 103 S.Ct. at 2334 (noting value of corroboration by independent police work of informant's tip); *Cauchon v. United States,* 824 F.2d 908 (11th Cir.1987), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987) (Federal agent's corroboration gave magistrate substantial basis for issuing search warrant when agent confirmed defendant was commuting from Florida to California, confirmed the address provided as defendant's home, and, through surveillance, confirmed the delivery to defendant of chemicals used in drug manufacture). Also, contrary to Defendant's arguments, it is irrelevant that the corroborated details were themselves innocent acts. This is true because the value of that corroboration is in its verification of the informant's familiarity with the activity; in other words, when an informant accurately relates "innocent facts" concerning an operation, there is a substantial basis for concluding that informant also is familiar with other, illegal facets of the same operation.

The controlled buy of a suspected illegal drug at the residence also serves to support Magistrate Huguenin's finding of probable cause. Indeed, few facts could more directly support allegations that a search of the residence would uncover contraband. Law enforcement officers made the controlled buy shortly before applying for a search warrant, so there can be no claims of stale information. Magistrate Dunsmore's Report and Recommendation attacked the value of the controlled buy because no field tests were conducted to verify that the purchased substance was an illegal drug. This argument, however, fails to recognize that evidence upon which a search warrant is based need not be sufficient to convict at trial. *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310–11. The Court takes judicial notice of the fact that drug enforcement officers are trained to recognize controlled substances and notes that nothing presented to Magistrate Huguenin suggested the purchased substance was anything other than what its sellers held it out to be—an illegal drug. *Cf. United States v. Figueroa,* 720 F.2d 1239, 1244 n. 7 (11th Cir.1983) ("An informant's failure to explain how he knew a substance to be narcotics does not, by itself, command a finding of no probable cause.").

The observation of "drug profile" traffic at the residence and the remaining information presented to Magistrate Huguenin, when taken in conjunction with the points noted above, seal the conclusion that he had a substantial basis for finding probable cause to issue the search warrant. The first-time informant's statements and the controlled buy strongly suggest that an illegal drug operation was under way at the residence. "Drug profile" traffic at the residence and information from other sources of illegal drug activities at the residence are items one would expect to find if that suggestion were valid. Considering the *Gates* totality of the circumstances standard and that the individual points need not be sufficient standing alone if they are sufficient when viewed as a whole, *Upton,* 466 U.S. at 733, 104 S.Ct. at 2088, Magistrate Huguenin had before him a picture from which he could conclude a search warrant should issue.

## B. *February 24, 1992, Search*

■ Unlike the first search warrant executed at Defendant's home, the second search warrant is not supported by the evidence. As noted in Magistrate Judge

Dunsmore's Report and Recommendation, all of the evidence relevant to the issuance of the second search warrant is found in Investigator Neal's affidavit in support; the oral testimony provided no other relevant information.[6] Investigator Neal's affidavit simply recites the fact and results of the first, February 22, 1992, search and then states that an Assistant United States Attorney ("AUSA") believed documentary evidence of criminal activity would be found in a second search. The affidavit does not explain why the AUSA held that belief; instead, it states only that the AUSA knew Defendant was part of an ongoing investigation by federal authorities.[7] Thus, Investigator Neal's affidavit seeks the issuance of a search warrant solely on the grounds that an AUSA believed a search would be fruitful.

■ Even considering all the surrounding circumstances and the deference to be given the magistrate's decision, *see Upton*, 466 U.S. at 733, 104 S.Ct. at 2088, Investigator Neal's affidavit did not supply a substantial basis on which the magistrate could find probable cause for issuing the second search warrant. As part of the totality of the circumstances, Magistrate Huguenin could have considered the fact and fruits of the previous search; however, they provided no support for the second warrant. All indications suggest the first search was a thorough one, and Investigator Neal's affidavit offers nothing to refute that suggestion. Given the sufficiency of the first search, a second search was warranted only if new information established probable cause to believe that Defendant's home still contained seizable items. The AUSA may have had legitimate grounds for believing that to be the case, but they are not found in Investigator Neal's affidavit.[8] A magistrate can take judicial notice of a federal agent's reliability, *United States v. Sorrells*, 714 F.2d 1522 (11th Cir. 1983); however, the agent must provide facts, not simply unsupported opinions.

### C. Exclusionary Rule "Good Faith" Exception

■ Having found the second search warrant insufficient, it is appropriate to determine whether the exclusionary rule "good faith" exception applies here to validate the February 24, 1992, search.[9] As

6. Because federal involvement in the second search warrant is obvious from the Assistant United States Attorney's involvement, review must be limited to the information provided in the affidavit. For a more detailed explanation of the supporting rational, see note 5 *supra*.

7. The second search warrant provides in relevant part:

On 02/22/92 at 2330 hours a search warrant was executed on the residence of Mark and Bonita Wright at 1821 Valley Brook Dr. in Grovetown, Ga. During the course of the search warrant, approximately one pound of Cocaine in different forms was found and approximately one pound of Marijuana was found. As a result of the search warrant Mark Warren Wright and Bonita Annglle Wright were arrested and charged with Trafficking Cocaine and Possession of Marijuana With Intent to Distribute. Since the time of the arrest and execution of the search warrant this affiant has received information from Assistant United States Attorney Leon Barfield in regards to Mark Wright being part of an on-going investigation by his agency since 1986, that connects Wright to the Sale and Trafficking of Illegal Narcotics. According to Barfield this affiant's agency may have missed several documents showing assets and associ-

ates that are associated with illegal drug activity.

8. According to Investigator Neal's affidavit, the AUSA explained that Defendant was part of an ongoing federal investigation. The insufficiency of this fact standing on its own to support the AUSA's opinion, and thereby to establish probable cause, is so glaring that notation of that insufficiency warrants only this brief footnote.

9. Defendant argues that *Leon* is not applicable here because the warrant was issued by Georgia officials under Georgia procedure and Georgia law does not recognize the *Leon* exception. This argument fails, however, because the admissibility in federal court of evidence seized under a search warrant is solely a question of federal law. See *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), where the Court explained:

In determining whether there has been an unreasonable search and seizure by state officers a federal court must make an independent inquiry.... The test is one of federal law, *neither enlarged by* what one state court may have countenanced, *nor diminished by* what another may have colorably suppressed. *Id.* (emphasis supplied). *Cf. United States v. De La Rosa*, 922 F.2d 675 (11th Cir.1991) (irrele-

explained more fully below, the "good faith" exception does not apply here because the second search warrant was based on evidence so lacking in indicia of probable cause that Investigator Neal could not reasonably have believed probable cause existed.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court crafted an exception to the exclusionary rule. Under this exception, evidence discovered by an officer acting in objective good faith on a search warrant issued by a detached and neutral magistrate should not be suppressed even if the warrant is later found to have violated the Fourth Amendment by not being grounded on a sufficient showing of probable cause. *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422. *Leon* cautions, however, that the newly created exception is not to be read as always barring suppression of evidence obtained under color of a search warrant. The Court elaborated by noting four specific situations in which the exception should not apply:

1. where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false or, except for reckless disregard for the truth, should have known was false;

2. where the judicial officer that issued the warrant "wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319 [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979); ..." [10]

3. where the warrant is "... based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' " [11] and

4. where the warrant issued is "... so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*Leon,* 468 U.S. at 923, 104 S.Ct. at 3420. It is the third, "so lacking in indicia" situation that applies here to preclude application of the "good faith" exception.

Although few guidelines for application of the "so lacking in indicia" situation are available, the proper focus of such an inquiry is on the objective belief of the *officer;* it is irrelevant that "thoughtful and competent jurists" may readily have recognized the insufficiency of the evidence. *United States v. Taxacher,* 902 F.2d 867, 871 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991).[12] Focusing on the officer, "... the test is whether the officer acted in objective good faith under all the circumstances." *Id.* *Taxacher* is valuable in directing the focus of the inquiry; however, the more difficult problem then presented is discerning exactly what a reasonable officer is expected to know. Unquestionably, officers are not legal technicians, so they are not expected to understand the intricacies of Fourth Amendment jurispru-

vant whether search warrant lawful under state standards; admissibility of evidence governed solely by federal law); *United States v. Mastrangelo,* 733 F.2d 793, 799 (11th Cir.1984) (admissibility of evidence in federal court governed by federal law rather than state law); *United States v. Melancon,* 462 F.2d 82, 91–92 (1972), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972) (defendant argued search warrant facially invalid under state law; sufficiency under state law deemed irrelevant, federal standards govern admissibility).

**10.** In *Lo–Ji Sales, Inc.,* the magistrate issued a warrant that, except for two items, left it entirely up to the discretion of officials conducting the search to decide what items should be seized.

**11.** Quoting from *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part).

**12.** For a more thorough analysis of this standard and of an inconsistent standard applied in the Ninth Circuit, see *Taxacher,* 902 F.2d at 871 ("... [T]he proper test is whether the *officer* acted in objective good faith under all the circumstances"; specifically rejecting proposal that the "so lacking indicia" situation focus on whether "... the affidavit presented evidence sufficient to create disagreement among thoughtful and competent judges") (emphasis in original).

dence. On the other extreme, today's officers are professionals who certainly are expected to recognize the insufficiency of a "bare bones" affidavit that offers only an officer's unsupported and unexplained opinions.

Divining the middle ground between these two extremes requires recognition of two competing points: (1) that aligning too closely with the first could lead to avoidable, gross infringements of citizen's Fourth Amendment rights; and (2) that aligning too closely with the latter could, in practice, destroy or unduly limit the "good faith" exception the United States Supreme Court saw fit to create in *Leon*. Since *Leon*, many critics have pointed to its "good faith" exception as evidence of the Court's weakening of the Fourth Amendment. Whatever the merits of such criticism, the lower courts are obligated to apply *Leon*. When doing so, however, jealous protection of citizens' Fourth Amendment rights remains a fundamental obligation of the courts.

Following from the Court's obligation to guard jealously citizens' Fourth Amendment rights is the need to consider the practical effects of setting the standard to which officers will be held. If the standard is set too low, law enforcement agencies will have little incentive to offer even the most rudimentary training in probable cause requirements.[13] Also, because officers will be ill-equipped to do so, the entire burden of recognizing Constitutional viola-tions will fall on the judiciary. Significantly, if officers are assigned none of this burden, they will be encouraged to present increasingly thin evidence in hopes of obtaining a search warrant that, even if later found insufficient, will protect the fruits of their search.[14] The result, of course, would be an increase in the number of searches made without a sufficient probable cause foundation. Balanced against this, however, are two obvious points: (1) because officers are not attorneys or judges, they can be expected to make only a limited legal analysis; and (2) too strict an application of the "so lacking in indicia" situation will destroy *Leon*'s exception—i.e. the exception will swallow the rule.[15]

In consideration of the points discussed above, it is appropriate to define the "so lacking indicia" objective standard as requiring that the affidavit include some identifiable, relevant, and at least colorably reliable facts on which a finding of probable cause could be based—mere opinions clearly will not suffice.[16] Under this standard, the "good faith exception" does not apply here because Investigator Neal could not reasonably have believed that his second affidavit contained sufficient indicia of probable cause to warrant the issuance of a search warrant. As more fully addressed in section II(B) of this Order, the only real support offered by Investigator Neal's second affidavit is its notation that an Assistant United States Attorney believed the first search did not uncover all that it

---

**13.** While law enforcement officers are not expected to be legal technicians, a rudimentary understanding of the standards imposed by the United States Supreme Court seems a critical tool for the carrying out of their daily duties. In this regard, the Court notes Investigator Neal's testimony that his search warrant affidavit training is very limited. Also, after reviewing the evidence presented here, the Court is convinced that Investigator Neal had more than ample information available to him to prepare an airtight affidavit to support the first search warrant. Had he done so, considerable time of this Court and of the attorneys would have been saved and the frustration of all would have been avoided. Accordingly and to allow the effective discharge of their duties, the Court encourages law enforcement officers to familiarize themselves with at least the most basic probable cause requirements. *Cf. United States v. Sor-*

*rells,* 714 F.2d 1522, 1529 (11th Cir.1983) ("We do not view *Gates* as an endorsement of slovenly or careless law enforcement work").

**14.** In contrast, requiring officers to share a meaningful portion of the burden will allow citizens at least a rudimentary double check that could prevent some unwarranted searches.

**15.** Or, stated more bombastically, the exception to the exclusionary rule exception would swallow the exclusionary rule exception.

**16.** The standard set forth here is an absolute minimum. The appropriate standard may be slightly higher; however, because Investigator Neal's affidavit cannot satisfy even this low standard, it is unnecessary here to undertake further refinements.

should have. Stated succinctly, Investigator Neal should have known that a search warrant can only be based upon *facts* and that such a bare opinion will not suffice.

In reaching this conclusion, the Court recognizes that the supporting affidavit also recites the fact and fruits of the first search and the Assistant United States Attorney's observation that Defendant was part of an ongoing federal drug investigation. The Court also acknowledges the second affidavit's implication that Investigator Neal discussed the possibility of a second search warrant with a licensed legal technician, the Assistant United States Attorney. These points do not justify Investigator Neal's reliance on the second search warrant, however, because the second affidavit is so obviously based on a bare opinion.

## III. CONCLUSION

For the reasons stated above, defendant Mark Wright's Motion to Suppress is DENIED IN PART and GRANTED IN PART. Defendant's Motion is DENIED as to the February 22, 1992, search of his residence and GRANTED as to the February 24, 1992, search of his residence. Accordingly, all evidence discovered during the February 24, 1992, search of Defendant's residence is hereby SUPPRESSED.

ORDER ENTERED.