[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15219
Non-Argument Calendar

_____

D. C. Docket No. 05-00045-CR-5-RS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TREVIN NUNNALLY,
a.k.a. RICK

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 2, 2007)**

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Trevin Nunnally appeals his conviction for conspiracy to distribute and to

possess with the intent to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii)-(iii), and 846. According to the indictment, Nunnally conspired together with Bruce Falson, Rodderick Davis, and "other persons," to sell cocaine as part of a single, overarching conspiracy from January 1, 2000, through the date of the indictment, December 13, 2005. Nunnally contends on appeal that the district court erred by: (1) failing to enter a judgment of acquittal for him based on an unconstitutional constructive amendment of the indictment; (2) failing to enter a judgment of acquittal for him based on the material variance between the single conspiracy alleged in the indictment and the proof at trial of multiple conspiracies; (3) failing to give sua sponte a multiple conspiracy jury instruction; and (4) admitting at trial statements made by an out-of-court declarant to a co-conspirator that were recorded from a jail where the co-conspirator was incarcerated.

Because Nunnally did not raise any of these arguments during his trial, we review only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Under plain error review, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error,

2

but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks and citations omitted). An error is "plain" if "it is obvious and clear under current law." United States v. Eckhardt, 466 F.3d 938, 948 (11th Cir. 2006), cert. denied, 127 S. Ct. 1305 (2007).

Nunnally first contends, with regard to the constructive amendment issue, that the district court erred in failing to enter a judgment of acquittal based on what he characterizes as an unconstitutional constructive amendment of the indictment. Nunnally argues that the indictment required that the jury find that the named defendants conspired together in order to convict him. According to Nunnally, however, the government's opening and closing statements and the district court's jury instructions were broader than the indictment, impermissibly so, because they allowed the jury to convict Nunnally if he conspired with the named defendants or any unnamed co-conspirator. We disagree.

The Sixth Amendment guarantees a defendant the right to be informed of the nature of the accusation against him. U.S. Const. amend. VI. And the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. "A fundamental principle stemming from this amendment is that a defendant can only be convicted for a crime charged in the indictment."

3

United States v. Keller, 916 F.2d 628, 633 (11th Cir. 1990).

A constructive amendment of an indictment occurs "[w]hen a defendant is convicted of charges not included in the indictment." Id. "A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried on only those charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment." United States v. Cancelliere, 69 F.3d 1116, 1121 (11th Cir. 1995).

"With regard to [a] conspiracy charge, the basic element which must be proved is an agreement between two or more persons to violate federal narcotics law." United States v. Figueroa, 720 F.2d 1239, 1244 (11th Cir. 1983). "[A]n individual can be convicted of conspiracy with 'unknown persons' referred to in the indictment." Id. at 1245 n.8. But where the indictment alleges that only two people were involved in a conspiracy and does not contain language indicating that the conspiracy involved unnamed "other" participants, in order to convict the jury must specifically conclude that the two named defendants conspired together. See United States v. Keller, 916 F.2d 628, 634–36 (11th Cir. 1990).

We find no constructive amendment of the indictment here. Nunnally's indictment specifically charged him with conspiring with two named defendants,

4

as well as unnamed "other persons." Thus, the government's opening statement, which did not mention Nunnally's named codefendants, and the government's closing argument, which indicated that the government need not prove all of the named defendants were members of the scheme, did not differ from the indictment. Nor did the court's instruction that Nunnally could be convicted for conspiracy if the jury found beyond a reasonable doubt that he conspired with the named defendants or with the unnamed participants constructively amend the indictment. See id. at 634 ("The general rule is that '[t]he existence of the conspiracy agreement rather than the identity of those who agree is the essential element to prove conspiracy.'") (citations omitted, alteration in original).

Additionally Nunnally's reliance on Keller and Harlow v. United States, 301 F.2d 361 (5th Cir. 1962), is misplaced. Keller involved an indictment that alleged a conspiracy solely between the named defendants without any "other persons" language. 916 F.2d at 634. Nunnally's indictment, however, was broader, including the named defendants as well as other unnamed co-conspirators.

Harlow is distinguishable as well. The government in Harlow conceded that one of the named defendants, Addy, conspired solely with the other two named defendants, and not with any of the unnamed co-conspirators. Harlow, 301 F.2d at 368. Thus, the government recognized that Addy's conviction should be

5

overturned if the record evidence did not link him with the other two named defendants.  Id.  Because the former Fifth Circuit concluded that there was no competent evidence linking the one named defendant with the other two named defendants, the Court reversed his conviction for conspiracy.  Id. at 368–69.  But that is not the situation here.

Nunnally next contends that the district court erred because there was a material variance between the indictment, which alleged a single conspiracy, and the evidence at trial, which proved that there were multiple conspiracies.  Again, we find no error.

We will not reverse a conviction because a single conspiracy was charged in the indictment, but multiple conspiracies were proved at trial, unless the variance is material and substantially prejudiced the defendant.  United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998).  "A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy."  Id. (citations omitted).  But a material variance will not be found if, "viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt."  Id.

There are three relevant factors for determining whether a single conspiracy

existed: (1) whether there was a common goal; (2) the nature of the scheme; and (3) the overlap of participants. Id. "In finding a single conspiracy, there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy." United States v. Taylor, 17 F.3d 333, 337 (11th Cir. 1994). "A single conspiracy may be found where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal." Id. (citations omitted).

We also have explained that, "to prove a single, unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies, the government must show an interdependence among the alleged co-conspirators." United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004). Separate transactions do not constitute multiple conspiracies "so long as the conspirators act in concert to further a common goal." Id. (emphasis omitted).

"It is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements . . . . This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." United States v. Calderon, 127 F.3d 1314, 1329 (11th Cir. 1997). Moreover, "'[t]he fact that various defendants

7

entered the conspiracy at different times[,] . . . performed different functions[, and] . . . participated in numerous separate transactions does not convert a single conspiracy to multiple conspiracies.'" Id. (citation omitted, alteration in original).

We find no material variance here. The government presented testimony demonstrating that all of the conspirators shared a common plan of possessing and distributing cocaine. Moreover the government explained the nature of the scheme and the overlap of participants through testimony that a core group of "other" participants—Donta Spurlin, Corey Smith, and Marvin Newsome, and, to a lesser extent, Montaque Seay, Sadderick Noird, and Perry Wilson—purchased the powder cocaine from one of three suppliers, Nunnally, Falson, or Davis. After turning the powder cocaine into crack cocaine, they sold the drugs to third parties. Based on this evidence, a reasonable juror could have found beyond a reasonable doubt that a single conspiracy to distribute cocaine commenced in 2000 and ended in 2005, and that Nunnally and the other named and unnamed co-conspirators were involved in this conspiracy. See Alred, 144 F.3d at 1414.

Nunnally's next argument is that the district court erred by failing to give sua sponte a multiple conspiracy jury instruction.[1] We disagree.

_____

[1] The government argued that Nunnally waived this issue by not objecting to the district judge's failure to give sua sponte a multiple conspiracy jury instruction. We reject this argument. The government's argument is based upon the invited error doctrine, which holds that a party waives any objection to a jury instruction when there was some affirmative sign from

8

"Generally, a multiple conspiracy instruction is required where 'the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment.'" Calderon, 127 F.3d at 1328. We examine whether a reasonable jury "could . . . have reasonably concluded from the evidence that multiple conspiracies, rather than the single charged conspiracy, existed." Id. In United States v. Edouard, 485 F.3d 1324, 1348–49 (11th Cir. 2007), we concluded that a district court "committed no error in not giving a multiple conspiracy instruction," where the evidence at trial proved "the single conspiracy charged in the superceding indictment."

Even where a multiple conspiracy instruction is warranted, we will not reverse a conviction for failure to give the instruction unless the defendant can show he was "substantially prejudiced by the refusal to give the instruction." Id. at 1330. We have explained that "[t]o find such prejudice, we would have to conclude that the evidence of multiple conspiracies was so strong that the jury

counsel at trial that the challenged jury instruction was acceptable. See United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir. 2005). But that doctrine is inappropriate here because Nunnally made no affirmative sign of agreement. We review a defendant not objecting to a district court's failure to give sua sponte a particular jury instruction for plain error. United States v. Dean, 487 F.3d 840, 846 (11th Cir. 2007).

would probably have acquitted [the defendant] of the conspiracy charges had it been given the tendered instruction." Id.

There was no error here. As discussed above, the government presented sufficient evidence for a reasonable juror to find beyond a reasonable doubt that Nunnally was involved in the single conspiracy charged. The government presented evidence that the conspirators all shared in a common plan of possessing and distributing cocaine. And some of the participants in the conspiracy testified about the nature, and overlap in participants, of the scheme. Therefore, we cannot say that if it had been given the instruction the jury probably would have acquitted Nunnally. See Calderon, 127 F.3d at 1329.

Finally, Nunnally argues that the district court violated his rights under the Sixth Amendment's Confrontation Clause by admitting the telephone conversation between Tameka Corbett and Corey Smith even though Corbett did not testify at trial and was not subject to cross-examination.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars the admission of out-of-court testimonial statements offered for the truth of

10

the matter asserted, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Id. at 59 n.9, 68, 124 S. Ct. at 1369 n.9, 1374. The Supreme Court, however, declined to "spell out a comprehensive definition of 'testimonial.'" Id. at 68, 124 S. Ct. at 1374. The distinction is significant because non-testimonial hearsay is not subject to the Confrontation Clause. See Davis v. Washington, ___U.S. ___, 126 S. Ct. 2266, 2273–78 (2006).

Even where evidence was improperly admitted, we will not reverse for plain error unless the error affected the defendant's substantial rights. See United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006). "The inquiry as to a defendant's substantial rights . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" Id. (citation omitted). "The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability 'sufficient to undermine confidence in the outcome.'" Rodriguez, 398 F.3d at 1299 (citations omitted). In Arbolaez, we concluded that the defendant's Confrontation Clause claim failed under plain error review, because he could not demonstrate that his rights were substantially affected by the admission of testimonial hearsay statements, in light of the "substantial admissible evidence against [him]." 450 F.3d at 1291.

We conclude that the district court here did not plainly err in admitting the

11

transcript of the tape-recorded conversation between co-conspirator Smith and his mother-in-law, Corbett. Even assuming that the district court erred by admitting the transcript, Nunnally cannot demonstrate that the error affected his substantial rights, i.e. a probability sufficient to undermine the confidence in the outcome.

The government presented the testimony from other admitted co-conspirators, including Spurlin, Newsome, Seay, Noird, and Smith, who all consistently testified about Nunnally's participation in the conspiracy. The government also presented corroborating evidence to show Nunnally's involvement in the conspiracy, including the testimony of DEA agent Daniel Kane that he obtained a car rental agreement, dated October 27, 2004, which showed that Newsome rented a car and named Nunnally as an additional driver, as well as Nunnally's cellular telephone records, which showed that he made and received calls from Newsome and Spurlin. Because of all this evidence, Nunnally cannot demonstrate that a reasonable juror would have reached a different verdict, or that the admission of the telephone conversation undermines confidence in the outcome of his case. Thus, Nunnally cannot show that his substantial rights were affected by the district court's error, if any, in admitting the recorded conversation between Smith and Corbett.

**AFFIRMED.**

12